UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

James B. Ryder, individually and on
behalf of others similarly situated,

Case No.

             Plaintiff,

Hon.
United States District Judge

v.

Magistrate Judge

Beaumont Health Inc. (d/b/a
Beaumont Hospital – Royal Oak),

             Defendant.

_____

Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com
_____

## CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND REQUEST FOR JURY DEMAND

This class action complaint is brought by Plaintiff James B. Ryder ("Ryder") individually and as class representative of similarly situated persons. Plaintiff Ryder alleges that Defendant violated his rights under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), by

1

subjecting him and others like him to disability discrimination that Congress sought to eliminate when it enacted the ADA. Ryder brings this action individually and as Class Representative to issue declaratory relief through a judgment that Defendant's policy governing employees who return to work after an extended medical leave of absence violates the ADA, to enjoin Defendant from applying its unlawful policies regarding employees who have been on extended medical leaves, and to gain compensation for the substantial economic losses and damages, as well as several emotional distress arising from Defendant's unlawful acts.

NOW COMES Plaintiff James B. Ryder, by and through his attorneys, PITT, MCGEHEE, PALMER & RIVERS, and in support of this Complaint against Defendant states as follows:

## I. JURISDICTION, PARTIES, AND VENUE

1.      Plaintiff timely filed his claims under the ADA, on behalf of himself and others similarly situated, with the Equal Employment Opportunity Commission and on December 12, 2017, the EEOC issued his Notice of Right to Sue for Charge No. 471-2017-02636 upon his request; therefore, he has properly exhausted the administrative requirements under the ADA for himself and for the members of the proposed class.

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which

authorizes federal courts to decide cases concerning federal questions and 28 U.S.C. §§ 1343(a)(3) and (4), which authorize federal courts to hear civil rights cases.

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1367 over the state-law claims arising from the same core operative facts as the federal questions.

4.    Plaintiff Ryder at all times material to this lawsuit was a resident of the State of Michigan.

5.    All of the class members who are similarly situated are residents and citizens of Michigan.

6.    Defendant Beaumont Health, Inc. is a Michigan Corporation.

7.    Venue is proper in this Court as Defendant conducts its business in the Eastern District of Michigan.

## II.  INDIVIDUAL ALLEGATIONS

8.    Ryder is a 53-year-old man.

9.    Ryder began his employment with Beaumont in 1992:

    a. His first position was a Labor and Delivery Obstetrics Attendant at Defendant's Troy Hospital, where he assisted RNs with patient needs, cleaned medical instruments, and ordered and stocked supplies.

b. From December 1994 until September 2000, Ryder worked as a Customer Service Coordinator and Intake Specialist for Defendant's Beaumont Home Medical Equipment division, where he sold durable medical equipment and accessories, taught patients how to use the equipment, verified insurance, explained insurance benefits to patients and their families, fitted various braces, and trained and mentored new employees.

c. From October 2000 until March 2005, Ryder served as an Emergency Technician II for Defendant's Troy Hospital, assisting patients under the supervision of RNs to check vital signs, insert catheters, draw blood, start IVs, and perform EKGs, among other duties.

d. Starting in April 2005, Ryder served as a Customer Service Coordinator and CPAP/BiPAP Technician for Defendant's Beaumont Home Medical Equipment division, where he sold and set up equipment for treating sleep disorders, educated patients and caregivers on the proper use of the equipment, consulted with patients' doctors, handled patient concerns, and trained and mentored new employees.

4

10.     In November 2009, Ryder was promoted by his prior manager, Tamara Kemp, to Senior Lead Customer Service Coordinator within the Home Medical Equipment division, with the job grade of AB9.

11.     In February of 2015, Ryder's new manager, Melissa Avey, without explanation, notice, or prior discussion with Ryder, demoted Ryder back to an AB8-level Customer Service Coordinator in Home Medical Equipment.

12.     During his 24-year career at Beaumont, Ryder routinely received high performance reviews and special recognition from administrators and patients who went out of their way to provide formal comments uniformly praising him for his service that exceeded expectations.

13.     In January 2016, Ryder was diagnosed with Common Variable Immunodeficiency ("CVID"), which impairs the immune system and leaves the individual highly susceptible to infection.

### A. Ryder's Medical Leaves

14.     On February 25, 2016, Ryder contracted pneumonia and Influenza A, which required him to take a medical leave.

15.     Ryder was placed on a medical leave covered by the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"), through March 13, 2016.

16.     Beaumont failed to provide Ryder with an accounting of the total number of days of this leave that were attributed to the FMLA total.

17.    On October 17, 2016, Ryder came down with another illness requiring a second medical leave.

18.    Beaumont failed to provide Ryder at any time with an accounting of his leave time remaining under the FMLA or the date when his FMLA qualification would expire.

19.    On December 19, 2016, Ryder received a letter dated December 16, 2016, from his supervisor Carol Owens informing him that his position was being filled by someone else.

20.    Ryder's FMLA qualification for the rolling calendar year had not yet expired at the time he was informed that an individual had been hired to replace him.

21.    On January 5, 2017, Ryder underwent a scheduled hernia surgery, which further delayed his return to work.

22.    Had Ryder known that his FMLA was about to expire, and had he not already been informed that he had been replaced in his former position, he would have postponed that surgery and returned to work before the expiration of his protected leave period.

23.    On January 23, 2017, Beaumont Human Resources Manager Dianne Beloungea instructed Ryder to obtain a physician's clearance and report to Owens's office on January 26, 2017.

24.     On January 25, 2017, Ryder received clearance from his physician to return to work on January 26, 2017.

**B. Ryder's Unpaid Lay-off Period**

25.     On January 26, 2017, Ryder reported to work and Beloungea informed him that he was being placed into the unpaid layoff status, pursuant to Beaumont Human Resources Policy No. 230, "Leave of Absence" ("Policy 230"), because his protected FMLA leave period had expired before he was cleared to return to work.

26.     On February 8, 2017, in accordance with Beaumont's Policy 230, Ryder began applying for jobs through the Beaumont internal job listings site.

27.     Between February 8, 2017 and May 10, 2017, Ryder applied for at least 18 open jobs posted on the Beaumont internal jobs listing site.

28.     Ryder's job applications included ones for the same or similar positions in his former department and all but one of them were at or below his employee grade level of AB8.

29.     From February 27, 2017 until March 6, 2017, Ryder was hospitalized with a rare dermatologic condition likely contracted because of his immune disorder.

30.     During his hospitalization, Ryder learned that CVID is a disability that would require the accommodation of not working in direct contact with

hospital patients.

31.     On March 2, 2017, while still in the hospital, Ryder, through his husband, provided Beaumont with a letter from his primary-care doctor indicating that as an accommodation for his disability, Ryder should be employed in a position that did not require direct-patient contact.

32.     On March 3, 2017, Ryder received an email offering him a job that required frequent direct-patient contact.

33.     On March 7, 2017, Ryder informed Beaumont that he could not accept this job, because his disability required that he work in a setting with limited patient contact.

34.     Of the 18 jobs Ryder applied for, only two would have required direct-patient contact, and Ryder applied for these before he learned of his need to avoid direct-patient contact.

35.     Ryder received only four interviews for all the applications submitted between February and May of 2017, and was expressly rejected or heard no response from all but the one for which he could not be reasonably accommodated.

36.     On March 16, 2017, Ryder emailed Beaumont Sr. VP and Chief Human Resources Officer Paul Conway to ask for clarification regarding his unpaid lay-off period and his need for accommodations as an individual with a

disability.

37.    On March 27, 2017, Ryder spoke with Director of HR Mark Ahlquist to discuss his employment status and sought assistance in returning to work to a position for which he was qualified and could be reasonably accommodated.

38.    Ahlquist did not assist Ryder in any way with this request.

39.    During the entire unpaid lay-off period, Ryder remained an active employee of Beaumont:

> a.  He was listed as an active employee in the Beaumont employee directory, and
>
> b.  He retained access to the Beaumont intranet, including his work email.
>
> c.  He received an invitation to select a gift for his 25th anniversary of employment at Beaumont.

40.    On June 14, 2017, Beaumont terminated Ryder's employment.

### III.  COMMON ALLEGATIONS

41.    Plaintiff incorporates the above allegations by reference here.

42.    According to the Beaumont Human Resources Policy No. 230, "Leave of Absence":

> If an employee returns from a Family and/or Medical Leave and has exceeded their twelve (12) weeks of job protection within a twelve (12) month period . . . and the employee's position is no longer available, he/she will be placed on an unpaid 60-day lay-off and must be referred to HR. During the lay-off period, employees are not eligible for a leave of absence. Health care coverage will be discontinued the last day of the month in which the lay-off was effective and COBRA information will be sent to the employee for health care coverage continuation options.

> If a position is not secured within sixty (60) days, or a "good faith job offer" is refused, the department manager should terminate the employee through Oracle Manager Self Service indicating "discharged layoff".

(Attached as Ex. A at p. 6 of 15.)

43.    Employees who request an extended medical leave and then intend to return to work after that leave are requesting a reasonable accommodation pursuant to their rights under the ADA.

44.    When faced with an employee who notifies Beaumont that he or she requires an accommodation of an extended medical leave related to a disability, Beaumont fails to engage with that employee in the requisite interactive process to identify a vacant position for which he or she is qualified and could be reasonably accommodated once the employee is cleared to return to work.

45.    When faced with an employee who notifies Beaumont that he or

she has a disability and requires a new position as a reasonable accommodation, Beaumont fails to facilitate the identification of an appropriate vacant position and placement of the employee into that position.

46.    Employees who are placed on the unpaid lay-off defined by Policy 230 remain employees in the Beaumont HR and job listing/application systems.

47.    Employees who are placed on the unpaid lay-off defined by Policy 230 are identified in Beaumont's HR and job listing/application systems in a way that distinguishes them as having recently been on an extended medical or famiy-care leave.

48.    Employees who are on the unpaid lay-off after an extended medical leave defined by Policy 230 are qualified and cleared to return to work.

49.    Beaumont hiring managers use Defendant's HR and job listings/application systems to review applicants for positions that are open when employees on the unpaid lay-off after an extended medical leave are seeking to return to work.

50.    Beaumont hiring managers are able to discern through these systems and/or from the guidance of Beaumont human resources officers which applicants are employees on an unpaid lay-off after an extended

medical or family-care leave.

51.     Beaumont hiring managers regard as disabled these internal applicants who are on an unpaid lay-off and fail to hire them because of outmoded and unfounded stigmatization they attach to persons perceived to have disabilities:

a.  They unfairly view any accommodation(s) these employees may need as special privileges, rather than lawfully required reasonable accommodations for an individual otherwise qualified for the job;

b.  They falsely assume that these employees will be sickly and less productive than employees they perceive to not have a disability; and

c.  They harbor negative views about these employees' qualifications for the job by conflating the need for a reasonable accommodation with an incorrect assumption that these employees are unqualified for the job.

52.     Beaumont hiring managers unfairly assume that an individual who has been on a family-care leave will be too distracted by his or her family member's disability and needs to perform his or her job.

53.     Beaumont passes over these otherwise qualified employees on an

unpaid lay-off status, and instead hires candidates who are not regarded as disabled or distracted by a family's member's disability for these open positions.

54.     Beaumont is a very large and sophisticated employer with capable internal and external counsel.

## COUNT 1: ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS, VIOLATION OF THE ADA, 42 U.S.C. § 12112

55.     Plaintiff incorporates the above allegations by reference here.

56.     Beaumont is covered as an employer under the ADA.

57.     42 U.S.C. § 12112 prohibits discrimination against a qualified individual on the basis of disability in regard to any aspect of employment through *inter alia*

    a. "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee,"

    b. "utilizing standards, criteria, or methods of administration" that have a discriminatory effect or perpetuate the discrimination of others,"

    c. failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified

individual with a disability, and

d. using standards, tests or other selection criteria unrelated to the job that tend to screen out an individual or a class of individuals with disabilities.

e. "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

58. Ryder and those similarly situated:

a. have physical or mental conditions that satisfy one or more of the definitions of Disability under 42 U.S.C. § 12102(1)(A), (B), or

b. have a relationship or association with an individual who has a physical or mental condition that satisfies one or more of the definitions of Disability under 42 U.S.C. § 12102(1)(A), (B).

59. Ryder and those similarly situated exercised their rights under the ADA by:

a. Requesting an extended medical or family-care leave; and

b. Seeking placement in a vacant position for which they were

14

otherwise qualified upon providing documentation that they were fit to return to work.

60.    Beaumont failed to engage Ryder and those similarly situated in an interactive process to identify and place them in vacant positions for which they were qualified and could be reasonably accommodated.

61.    Beaumont, being a large employer with sophisticated counsel, had reason to know this action was unlawful.

62.    As a result of Beaumont's failure to engage in the interactive process, Ryder and those similarly situated have suffered loss of income, humiliation, severe emotional distress, and other harms that Congress sought to prevent through enactment of the ADA.

## COUNT 2: ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS, VIOLATION OF THE ADA, 42 U.S.C. §§ 12102(1), (3) AND 12112

63.    Plaintiff incorporates the above allegations by reference here.

64.    42 U.S.C §§ 12102(1) defines a "disability" as

   a. a physical or mental impairment that substantially limits one or more major life activities of such individual;

   b. a record of such an impairment; or

   c. being regarded as having such an impairment.

65.    42 U.S.C. § 12102(3) defines an individual as being "regarded as

having such an impairment" if that individual "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."

66.    Beaumont's Policy 230 placed Ryder and those similarly situated in an unpaid lay-off status after they were cleared to return to work.

67.    During this unpaid lay-off, Ryder and those similarly situated retained their status as an active employee, but Beaumont required them to apply and compete against other applicants for vacant positions within Beaumont for which they were otherwise qualified.

68.    Beaumont, through its H.R. and job listing/application systems, allowed hiring managers to discern that Plaintiff and those similarly situated had recently been on an extended medical leave.

69.    Beaumont's HR officers knew which employee-applicants are in the unpaid lay-off status and shared this information with hiring managers.

70.    Beaumont's hiring managers regarded Plaintiff and those similarly situated as disabled because of their recent extended medical leave.

71.    Beaumont's hiring managers harbored outmoded and baseless stereotypes that stigmatize individuals with perceived or actual disabilities such as Plaintiff and similarly situated employees.

16

72.     Beaumont's hiring managers failed to place Plaintiff and similarly situated employees into positions for which they were otherwise qualified in favor of applicants whom they did not perceive as disabled.

73.     Beaumont's failure to place Plaintiff and similarly situated employees into open positions ultimately resulted in Plaintiff and similarly situated employees being terminated from Beaumont.

74.     Beaumont, being a large employer with sophisticated counsel, had reason to know this action was unlawful.

75.     As a result of Beaumont's policy and its hiring managers' discrimination against individuals they regarded as disabled, Ryder and those similarly situated have suffered loss of income, humiliation, severe emotional distress, and other harms that Congress sought to prevent through enactment of the ADA.

## COUNT 3: ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS: VIOLATION OF OF THE ADA, 42 U.S.C. § 12203

76.     Plaintiff incorporates the above allegations by reference here.

77.     42 U.S.C. § 12203 prohibits *inter alia* interference, coercion, or intimidation "of any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any

right granted or protected" by the ADA.

78.    Ryder and those similarly situated exercised their rights under the ADA by requesting an extended medical leave of absence.

79.    Beaumont by its policy placed these individuals who had requested an extended leave of absence and were then cleared to return to work into the so-called "lay-off status."

80.    Beaumont retaliated against Plaintiff and similarly situated employees for exercising their rights under the ADA by placing them into the so-called "lay-off status," which caused them to lose opportunities for gainful employment.

81.    By placing Plaintiff and similarly situated employees into the so-called "lay-off status," Beaumont exposed them to unfair stigmatization, humiliation, and mistreatment by its hiring managers.

82.    Beaumont, being a large employer with sophisticated counsel, had reason to know this action was unlawful.

83.    As a result of Beaumont's retaliation through interference with their employment and their deprivation of rights because they exercised or attempted to exercise their rights under the ADA, Ryder and those similarly situated have suffered loss of income, humiliation, severe emotional distress, and other harms that that Congress sought to prevent through enactment of

18

the ADA.

## COUNT 4: ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS: VIOLATION OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. §§ 37.1101 ET SEQ ("PWDCRA")

84.     Plaintiff incorporates the above allegations by reference here.

85.     Ryder and those similarly situated are persons with disabilities as defined by the PWDCRA.

86.     Beaumont is an employer covered by the PWDCRA.

87.     M.C.L. §§ 37.1101 *et seq* provides that employers may not "fail or refuse to hire, recruit, or promote an individual," "discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment," or "limit, segregate or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee" due to a disability unrelated to the individual's ability to perform a particular job or position.

88.     Ryder and those similarly situated informed Beaumont of their need for an accommodation.

89.     Beaumont failed to engage Ryder and those similarly situated in an interactive process to identify positions for which they were qualified and could be reasonably accommodated.

19

90.    As a result of Beaumont's failure to engage in the interactive process, Ryder and those similarly situated have suffered loss of income, humiliation, severe emotional distress, and other harms that the Michigan Legislature sought to prevent through enactment of the PWDCRA.

## COUNT 5: ON BEHALF OF PLAINTIFF AND ALL CLASS MEMBERS: VIOLATION OF PWDCRA

91.    Plaintiff incorporates the above allegations by reference here.

92.    Ryder and those similarly situated informed Beaumont of their need for an accommodation.

93.    Beaumont failed to place Plaintiff and those similarly situated into open positions for which they were qualified and could be reasonably accommodated and ultimately caused their employment with Beaumont to be terminated.

94.    As a result of Beaumont's failure to place Ryder and those similarly situated into open positions, they have suffered loss of income, humiliation, severe emotional distress, and other harms that the Michigan Legislature sought to prevent through enactment of the PWDCRA.

## COUNT 6: ON BEHALF OF PLAINTIFF RYDER, VIOLATION OF THE FMLA, 29 U.S.C. § 2615

95.    Plaintiff incorporates the above allegations by reference here

96.    29 U.S.C. § 2615 prohibits employers from interfering with,

restraining, or denying the exercise of or the attempt to exercise any right provided by the FMLA.

97.   Ryder was on a qualified FMLA leave during 2016.

98.   Beaumont failed to provide notice of designation as required by 29 C.F.R. § 825.300(d), when it did not inform Ryder when his FMLA would expire.

99.   Ryder's supervisor Carol Owens and HR officer Diane Beloungea interfered with Ryder's rights under the FMLA when they hired someone to fill his position before his leave expired and did not inform him that he would be eligible for another position if he returned before the end of his FMLA leave.

100.   On April 15, 2016, Ryder had filed a successful grievance against his supervisors Carol Owens and Melissa Avey for their failure to respond to his request for time off in a timely fashion.

101.   Ryder's supervisor Carol Owens interfered with Ryder's FMLA rights knowingly and with intent to harm Ryder because they resented his having successfully grieved an action against them in April of 2016.

102.   As a result of Beaumont's actions and omissions under the FMLA, Ryder has suffered loss of wages, health insurance coverage, and valuable fringe benefits.

21

## IV.  CLASS ALLEGATIONS

103.   Plaintiff requests certification pursuant to Fed. R. Civ. P. 23(b)(2) on behalf of proposed proposed class defined as follows:

> All Beaumont employees who have sought in the past three years or will seek to return to work after an extended medical leave pursuant to Beaumont's "Leave of Absence" Policy 230.

104.  The members of the proposed class defined in paragraph 102 were denied or will be denied the right to engage in an interactive process to identify a vacant job for which they were qualified and could be reasonably accommodated.

105.  Members of the proposed class defined in paragraph 103 were regarded by or will be regarded by Beaumont hiring managers as disabled, or have been regarded as having a relationship with someone who is disabled, and were denied placement, ultimately resulting in the termination of their employment, because of unjust stigmatization attached to persons with disabilities.

106.  Members of the proposed class defined in paragraph 102 suffered retaliation through interference with their opportunities for employment and

intimidation because they exercised or sought to exercise their rights under the ADA.

107. Defendants' "Leave of Absence" policy generally applies to all members of the proposed class; therefore, the declaratory and injunctive relief sought by Plaintiff is appropriate respecting the class as a whole.

108. The number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress of the injuries and damages sustained.

109. There are questions of law and fact raised by the named Plaintiff's claims common to those raised by the Classes he seeks to represent. Such common questions predominate over questions affecting only individual members of the Class.

110. The violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class members.

111. Plaintiff will fairly and adequately protect the interests of the Plaintiff Class members. Plaintiff's counsel is unaware of any conflicts of interest between the Class Representative and absent Class members with respect to the matters at issue in this litigation; the Class Representative will vigorously prosecute the suit on behalf of the Class; and the Class

23

Representative is represented by experienced counsel. Plaintiff is represented by attorneys with substantial experience and expertise in complex and class action litigation involving property damage.

112.  Plaintiff's attorneys have identified and thoroughly investigated all claims in this action and have committed sufficient resources to represent the Class.

113.  The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice. Moreover, the prosecution of separate actions by individual members of the Class could result in inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

## V.  PRAYER FOR RELIEF

Because of Defendant's above-described violations, Plaintiff seeks the following relief on behalf of himself and others similarly situated:

a.  Declare Beaumont Policy 230 unlawful as written because:

i. It classifies employees due to their perceived disability, actual disability, or association with an individual with a disability in a way that adversely affects their employment opportunities;

      ii.  It perpetuates disability discrimination by subjecting all individuals who have taken an extended medical or family-care leave a classification to the bias and stereotypes of hiring managers; and

     iii.  It subjects individuals who have taken an extended medical leave to unfair standards and burdens unrelated to the job.

b. Reform the language in Beaumont's Policy 230 so that it no longer violates the ADA as written.

c. Enjoin Defendant from enforcing its current "Leave of Absence" policy on the grounds that:

      i.  It unlawfully denies employees with disabilities their right to an interactive process to identify a position for which they are qualified and can be reasonably accommodated;

      ii.  It unlawfully informs hiring managers that specific employees have been on a medical leave of absence and thus encourages unlawful discrimination in hiring decisions;

     iii.  It unlawfully intimidates and interferes with the

> > > gainful employment of individuals who have exercised or sought to exercise their rights under the ADA.
> >
> > iv. It violates Michigan's PWDCRA by failing to reasonably accommodate employees with disabilities.
> >
> > v. It violates Michigan's PWDCRA by failing to place employees into open positions because of their disabilities and ultimately causes these individuals to lose their employment.
>
> d. Require Defendant to review every case and reinstate class members as appropriate to provide a make-whole remedy;
>
> e. Award reasonable attorney's fees and costs associated with bringing this lawsuit; and
>
> f. Grant other relief as the Court deems appropriate.

Plaintiff seeks for himself the following relief regarding his causes of action:

> a. Award economic damages resulting from Defendant's unlawful actions;
>
> b. Award compensatory damages for the emotional distress and humiliation suffered by Plaintiff as a result of

26

Defendant's unlawful actions;

c.   Award punitive damages to Plaintiff for Defendant's knowing implementation of personnel policies that violated the ADA;

d.   Award prejudgment interest for Plaintiff's economic losses;

e.   Award punitive damages for Defendant's willful and intentional violation of Plaintiff's rights under the FMLA; and

f.   Grant other relief as the Court deems appropriate.


Respectfully submitted,

**PITT MCGEHEE PALMER & RIVERS, P.C.**

/s/Michael L. Pitt
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com

Dated:  March 7, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

James B. Ryder, individually and on
behalf of others similarly situated,

                    Plaintiff,

v.

Beaumont   Health   Inc.   (d/b/a
Beaumont Hospital – Royal Oak),

                    Defendant.

Case No.

Hon.
United States District Judge

Magistrate Judge

_____

Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com

_____

**<u>DEMAND FOR JURY BY TRIAL</u>**

      Plaintiff, by and through his attorneys, Pitt McGehee Palmer & Rivers,

P.C., hereby demand a trial by jury of all issues in the within cause of action.

**PITT MCGEHEE PALMER & RIVERS**

By:    /s/Michael L. Pitt
Michael L. Pitt (P24429)
Beth M. Rivers (P33614)
Pitt McGehee Palmer & Rivers PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI  48067
248-398-9800
mpitt@pittlawpc.com
brivers@pittlawpc.com

Dated:  March 7, 2018