UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES RYDER,

    Plaintiff,

v.                                           Case No. 18-10760

BEAUMONT HEALTH, INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON CLASS ALLEGATIONS**

Plaintiff James Ryder asserts various claims against his former employer, Defendant Beaumont Health, under the American with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). He also alleges one class action claim under the ADA based on Defendant's suspected classification and demarcation of employees who took leave for longer than 12 weeks. Currently pending before the court is Defendant's Motion for Judgment on Plaintiff's Class Allegations. (Dkt. #23.) Defendant seeks judgment on Plaintiff's sole class allegation under the ADA. The motion does not address the merits of the claims Plaintiff asserts in his individual capacity. The motion has been fully briefed, and the court determines that a hearing is not necessary. *See* E.D. Mich. 7.1(f)(2). For the reasons stated below, the court will grant Defendant's motion.

**I. BACKGROUND**

Plaintiff began working for Defendant in 1992. (Dkt. #21, PageID 265.) In 2016, he took FMLA leave for various medical reasons. In his amended complaint (Dkt. #21),

Plaintiff asserts that Defendant failed to inform him that he had exhausted his FMLA leave for the year when he took additional time off in January 2017 for a scheduled surgery. (*Id.* at 268.) To accommodate his scheduled surgery, Plaintiff took leave beyond the 12 weeks permitted by the FMLA. When he was cleared to return to work after this surgery, he was placed on unpaid layoff status pursuant to Beaumont Human Resources Policy No. 230 ("Policy 230"). (*Id.*) Policy 230 states in relevant part:

> If an employee returns from a Family and/or Medical Leave and has exceeded their twelve (12) weeks of job protection within a twelve (12) month period . . . and the employee's position is no longer available, he/she will be placed on an unpaid 60-day lay-off and must be referred to HR. During the lay-off period, employees are not eligible for a leave of absence. Health care coverage will be discontinued the last day of the month in which the lay-off was effective and COBRA information will be sent to the employee for health care coverage continuation options.
>
> If a position is not secured within sixty (60) days, or a "good faith job offer" is refused, the department manager should terminate the employee through Oracle Manager Self Service indicating "discharged layoff".

(*Id.* at 271; Dkt. #31, PageID 454)

While on unpaid layoff status, Plaintiff applied for jobs through Defendant's internal job listing site. He was not selected for any of the 18 positions he applied to, and he was ultimately terminated, pursuant to Policy 230, because he failed to obtain another position within 60 days of being placed on unpaid leave status. (Dkt. #21, PageID 270–71.)

Plaintiff alleges that Defendant's internal hiring databases allows hiring managers to discern which applicants are employees currently placed on unpaid layoff status and that this demarcation of employees violates the ADA. (*Id.* at 272, 280.) Plaintiff's sole class action allegation is based on this alleged demarcation of employees. As the putative class, Plaintiff names "[a]ll Beaumont employees who have sought in the past

2

three years or will seek to return to work after an extended medical leave pursuant to Beaumont's 'Leave of Absence' Policy 230," specifically "individuals who have taken extended medical leaves or have a familial relationship with someone who has a disability." (*Id.* at 283.) Plaintiff requests damages on behalf of himself and injunctive and declaratory relief in the form of reforming or eliminating Policy 230 on behalf of the class. (*Id.* at 285.)

Defendant now moves for judgment on Plaintiff's class allegation pursuant to Federal Rule of Civil Procedure 12(c).

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). When ruling on a Rule 12(c) motion, the court must take as true "all well-pleaded material allegations of the pleadings of the opposing party," and "the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *So. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir.1973)). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* at 581–82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)). The court should grant a Rule 12(c) motion "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991)). "There must be no material issue of fact that could

prevent judgment for the moving party." *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274, 279 (6th Cir. 2009).

When a party presents evidence in support of its 12(c) motion that is not contained in the pleadings or record, the court may construe the motion as a motion for summary judgment. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) ("This court has found that the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment.") However, the Sixth Circuit has held that this rule does not apply to a court's consideration of "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

### III. DISCUSSION

When, as here, a defendant moves for judgment on class allegations prior to the parties conducting discovery, the defendant "has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]." *Modern Holdings, LLC v. Corning Inc.*, No. 13-405-GFVT, 2015 U.S. Dist. LEXIS 41138, at *7–*8 (E.D. Ky. Mar. 31, 2015) (citations omitted). "A ruling on a motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion." *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013). As such, the complaint must present factual allegations sufficient to raise a right

4

to class certification "above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court views the complaint in the light most favorable to the plaintiff and takes all well pleaded factual allegations as true. *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009); *Carrier Corp. v. Outokumu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility" of class certification, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The substantive analysis, therefore, begins and ends with "a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal citations omitted). Subsection (a) of Rule 23 "states four threshold requirements applicable to all class actions: (1) numerosity . . . ; (2) commonality . . . ; (3) typicality . . . ; and (4) adequacy of representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Subsection (b) also requires that "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614. If the court concludes that Plaintiff will be unable to meet the prerequisites of either subsection, the class allegation fails as a matter of law.

Defendant argues that Plaintiff's class allegation fails because class certification is not necessary for Plaintiff to obtain his requested injunctive and declaratory relief. (Dkt. #23, PageID 316.) Defendant further argues that Plaintiff has not sufficiently pleaded facts to establish numerosity under Rule 23(a)(1) (*Id.* at 333) nor can Plaintiff satisfy the commonality and typicality prerequisites of Rule 23 as a matter of law

5

because of the inherent individualized nature of the putative class members' claims. (*Id.* at 334.) Defendant does not challenge Plaintiff's assertion of adequate representation. Finally, Defendant asserts that Plaintiff's class allegation fails to comport with Rule 23(b). As explained below, Plaintiff cannot satisfy the commonality and typicality prerequisites of Rule 23(a). Therefore, no analysis under Rule 23(b) is necessary to grant Defendant's motion.[1] The court will address each of the three contested Rule 23(a) prerequisites—numerosity, commonality, and typicality—in turn below.

### A. Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires a proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "often referred to as the 'numerosity' requirement . . . the Rule's core requirement is that joinder be impracticable." *Coleman v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015) (citing *Newberg on Class Actions* § 3:11 (5th ed. 2014)). As such, "[t]here is neither one specific 'magic number' nor . . . is numerosity alone necessarily determinative." *Id.* Rather, "the numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v.*

---

[1] Because Plaintiff cannot satisfy the prerequisites of Rule 23(a) as a matter of law, the court need not analyze whether Plaintiff's complaint also satisfies Rule 23(b) or whether class certification is necessary. However, it appears that Plaintiff's requested equitable relief, if granted, would extend to similarly situated parties without the need for class certification because it would reform the contested policy that applies to all employees. The court is not persuaded by Plaintiff's arguments to the contrary, which rely heavily on class action certification cases in the context of civil rights actions. (Dkt. #24, PageID 357–59.) As explained *infra* Parts II(A)–(B), ADA claims, unlike civil rights actions, necessitate highly-individualized analysis and are distinguishable from the facts of this case. When injunctive relief would, if granted, inure to the putative class regardless of certification, class action is not necessary. *See Monteleone v. Auto Club Grp.*, 113 F.Supp. 3d 950, 960 (E.D. Mich. 2015) (collecting Sixth Circuit cases).

*EEOC*, 446 U.S. 318, 330 (1980). "[W]hile the exact number of class members need not be pleaded . . . impracticability of joinder must be positively shown, and cannot be speculative." *In re OnStar Contract Litigation*, 278 F.R.D. 352, 373 (E.D. Mich. 2011) (Cox, J.). Plaintiffs "must 'show some evidence of or reasonably estimate the number of class members.'" *Turner v. Grant Cty. Det. Ctr.*, No. 05-148, 2008 U.S. Dist. LEXIS 24210, at *44 (E.D.Ky. Mar. 26, 2008) (quoting *Schwartz v. Upper Deck*, 183 F.R.D. 672 (S.D. Cal. 1999)).

Here, Plaintiff has pleaded that "[t]he number of class members is sufficiently numerous to make class action status the most practical method for Plaintiffs to secure redress of the injuries and damages sustained." (Dkt. #21, PageID 283.) Defendant rightly argues that such conclusory allegations are insufficient under ordinary pleading standards. (Dkt. #23, PageID 333.) In his response, Plaintiff includes an estimate of a possible class size of 38 based on publicly-available statistics from the U.S. Department of Labor on FMLA-leave utilization and argues that common sense dictates the impracticality of joinder for this class. (Dkt. #24, PageID 365–67.) Plaintiff also argues that discovery is needed to estimate the class size. (*Id.* at 366–37.) Although the allegations in Plaintiff's complaint are lacking, the court may consider this publicly available data in analyzing Defendant's motion. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (noting that matters of public record maybe considered in analyzing a 12(c) motion). Construing the evidence in the light most favorable to Plaintiff and considering that the parties have not yet conducted discovery, Plaintiff has proffered just enough evidence to establish numerosity and the impractically of joinder at this early stage in the case.

### B. Commonality

Rule 23(a)(2) requires a party seeking class certification to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement "is generally satisfied by the existence of a single issue of law or fact that is common across all class members and is thus easily met in most cases." *Newberg on Class Actions* § 3:18 (5th ed. 2014). Nevertheless, in *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court held:

> Commonality requires the plaintiff to demonstrate that *the class members have suffered the same injury*. This does not mean merely that they have all suffered a violation of the same provision of law . . . . Their claims must depend upon a common contention— for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart Stores, Inc.*, 564 U.S. at 349–50(emphasis added). In short, what matters to class certification "is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (emphasis in the original)).

Defendant contends that certifying the class will require the court to engage in a case-by-case inquiry of each putative member to determine, among other things,

8

whether "(i) each putative class member is a 'qualified individual' with a 'disability' under the ADA; (ii) hiring managers were aware of this fact; and (iii) hiring managers acted upon this knowledge" in making hiring decisions. (Dkt. #23, PageID 336.) Plaintiff denies that such individualized determinations are necessary and asserts that commonality is established under two theories.

Plaintiff first argues that the "common coding" of employees returning from leave segregates or classifies job applicants based on disability in violation of 42 U.S.C. § 12112(b)(1) of the ADA. (*Id.* at 361–62.) Plaintiff compares this classification of applicants to the possibility for class certification based on biased testing procedures discussed in *Wal-Mart Stores, Inc. v. Dukes*. Plaintiff's attempted comparison fails, however, because the policy Plaintiff challenges is not facially discriminatory to any readily-discernable protected class. Rather, Plaintiff suggests that Policy 230 can be applied in a discriminatory manner to screen out disabled applicants. The pitfall of Plaintiff's argument is that the antidiscrimination protections of the ADA apply only to "qualified" individuals who are discriminated against "*on the basis of disability*." 42 U.S.C. § 12112(a) (emphasis added). Implicit in this language is the requirement that an individual suffers from a recognized disability to trigger the ADA's antidiscrimination protections.

Even assuming that Defendant demarcated *all* employees who took noncovered FMLA leave in its internal database, the ADA's antidiscrimination protections apply only to disabled employees or those employees who are regarded as disabled. Determining whether a putative class member is disabled or regarded as disabled inherently requires the court to engage in case-by-case review of each class member. For individuals with

9

actual disabilities, the court must determine whether the disability falls within the ADA's definition of disability. To be regarded as disabled, an individual must experience a condition that lasts more than six months. 42 U.S.C. § 12102(3)(B). Accordingly, the court must examine each member to determine whether they suffered from an actual disability or experienced a condition for more than six months and must next determine whether such a disability was known and considered by hiring managers. Such fact-intensive inquiry runs contrary to Rule 23(a)'s commonality prerequisite.

Even if Plaintiff can establish that all class members satisfied the ADA's definition of disability, commonality would still be lacking because not all members may have faced discrimination. For example, not all employees may have been qualified for the positions to which they applied. Commonality cannot be established because the court must determine, on a case-by-case basis, whether each putative member was disabled and whether the disability itself or the qualifications of each employee impacted employment prospects. As the Supreme Court reasoned in *Wal-Mart Stores, Inc. v. Dukes*, commonality fails when a plaintiff cannot present "some glue holding [together] the alleged reasons" for a particular employment decision. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 (2011). Based on the allegations in the complaint, Plaintiff's claim lacks this required "glue," and no amount of discovery will remedy this fundamental deficiency.

Plaintiff's second argument for establishing commonality, that "the identification of putative class members to hiring managers is a general policy of discrimination applicable to all," fails for similar reasons. Policy 230 is facially neutral—it does not explicitly discriminate against any protected group nor does it mandate discriminatory

action on the part of management. Too many variables exist for why a putative class member could have been passed over for a position. Accordingly, Plaintiff cannot establish commonality as a matter of law.

### C. Typicality

The typicality requirement under Rule 23(a)(3) requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claim is typical of the purported class only "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, or if his or her claims are based on the same legal theory." *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (internal quotations omitted). "[T]he interests and claims of the various plaintiffs need not be identical." *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). Rather, the question is simply "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Beattie*, 511 F.3d at 561. "[T]he typicality requirement is not satisfied, however, when a plaintiff can prove his own claim but not 'necessarily have proved anybody's [sic] else's claim.'" *Id.* (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). Furthermore, "[w]here a class definition encompasses many individuals who have no claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members . . . the typicality premise is lacking." *Serrano v. Cintas Corp.*, No. 04-40132, 2009 U.S. Dist. LEXIS 26606, at *8 (E.D. Mich. Mar. 31, 2009) (citing *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d. Cir. 2006)); *see also In re OnStar Contract Litig.,* 278 F.R.D. 352, 375

(E.D. Mich. 2011) ("[W]here a defendant has unique defenses against each class member's individual claim, a case is unsuitable for class action.") The Sixth Circuit has found that the commonality and typicality prerequisites "tend to merge" when analyzed. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (citing *Wal-Mart Stores, Inc*, 564 U.S. at 351 n.5).

In the amended complaint, Plaintiff asserts that "[t]he violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class members." (Dkt. #21, PageID 284.) Plaintiff argues that Policy 230 amounts to a "per se violation" of the ADA which suffices to establish typicality. (Dkt. #24, PageID 367–69.) Defendant argues that the individualized determinations required in this case preclude Plaintiff from establishing typicality, regardless of Plaintiff's attempt to brand the claim as a per se violation of the ADA. (Dkt. #23, PageID 336.)

As described above, the success of Plaintiff's individual and class action ADA discrimination claims initially turn on whether Plaintiff and class members were disabled. Plaintiff's satisfaction of the ADA's definition of disability does not guarantee that other class members will also qualify as disabled, let alone qualify as disabled under the same theory as Plaintiff. Additionally, because Policy 230 does not mandate discriminatory action, any determination that Defendant's hiring managers based their decisions in part on Plaintiff's alleged disability does not establish that the disabilities of other class members also impacted hiring decisions. Class members may not be qualified based on their experience and hiring managers may weigh experiences differently. Simply too many variables exist in Plaintiff's claim, and these variables give

rise to the probability that Defendant will have unique defenses to challenges from each class member. For these reasons, Plaintiff cannot, as a matter of law, establish typicality because the success of Plaintiff's individual claim does not guarantee the success of the claims of putative class members.

## IV. CONCLUSION

Although Plaintiff's complaint may suffice to establish numerosity at this stage, the class allegation ultimately fails as a matter of law because Plaintiff cannot establish either commonality or typicality. The court makes no findings as to the merits of the claims brought in Plaintiff's individual capacity. Accordingly,

IT IS ORDERED that Defendant's Motion for Judgment on Class Allegations (Dkt. #21) is GRANTED.

                                                  s/Robert H. Cleland
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 2, 2018, by electronic and/or ordinary mail.

                                                  s/Lisa Wagner
                                                  Case Manager and Deputy Clerk
                                                  (810) 292-6522

S:\Cleland\Cleland\HEB\Civil\18-10760.RYDER.strike.class.cert.HEB.docx